IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**TIMOTHY J. PAGLIARA,**

   Plaintiff,

v.

**JOHN DOE DEFENDANT NO. 1,**

   Defendant.

Case No. _____

JURY DEMAND

## COMPLAINT

The Plaintiff, Timothy J. Pagliara, for cause of action against Defendant John Doe No. 1, states:

### NATURE OF THE ACTION

1. Tim Pagliara is a well-known wealth management advisor, speaker, and author from Franklin, Tennessee. He has over three decades of experience working in the finance industry, has made appearances on most of the major business news sources, and has been published in multiple formats, including the publication of his book which reached bestseller status on Amazon.com.

2. Mr. Pagliara maintains a website which can be accessed at the domain name timpagliara.com. His website provides information about him and his book, and it allows visitors to purchase his book, engage him for speaking events, contact him, and interact with him on social media.

3. The defendant, however, has recently registered the identical domain name using a different generic top-level domain: timpagliara.net. The website accessed at that domain, however, is merely a carbon-copy of over 110 other websites

containing domain names made up only of the personal names of other financial advisors. Masquerading as a "gripe site," the defendant actually has no intention other than to sit on the domain names of financial advisors' personal names. This is a clear violation of the Anti-cybersquatting Consumer Protection Act (the "ACPA").

## PARTIES AND JURISDICTION

4. Plaintiff Timothy J. Pagliara is a citizen and resident of Franklin, Tennessee.

5. Plaintiff is not aware of the name and capacity of Defendant John Doe No. 1 and therefore sues this Defendant by fictitious name. Plaintiff has conducted a good-faith investigation which has not revealed the identity of the relevant defendant. The identity of the defendant will be able to be ascertained through reasonable discovery.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1125(d).

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

8. Mr. Pagliara is the founder and Chief Investment Officer of CapWealth Group, a wealth management entity based in Franklin, Tennessee.[1]

---

[1] The CapWealth Group has several related entities under its corporate umbrella, all containing the "CapWealth" moniker. Mr. Pagliara is an owner and officer of the related entities as well. For the purposes of this action, they are all referred to simply as "CapWealth."

4853-7056-6272.1

9. Mr. Pagliara is a prominent financial advisor in Middle Tennessee. Indeed, he has been rated the number one financial advisor in Tennessee multiple times by both Forbes and Barron's magazines.

10. Mr. Pagliara has repeatedly spoken as a guest on Fox Business, CNBC, CBS News, and Yahoo! Finance discussing various finance-related topics and his insights drawn from his experience of over three decades in the industry. He is also a former contributor on Forbes, where he authored blogs about similar financial topics. At last check, his last article published on December 18, 2019, exploring the announcement that the city of Nashville had gone into receivership had received over 31,000 views.

11. One topic within finance on which Mr. Pagliara has particularly focused is that of government sponsored entities, or "GSEs."

12. In March 2019, Mr. Pagliara registered the domain name timpagliara.com and published a website accessed through it ("Mr. Pagliara's Website").

13. In December 2020, Mr. Pagliara published *Another Big Lie: How the Government Stole Billions From The American Dream Of Home Ownership. And Got Caught!*, which examined the role of GSEs in relation to the 2008 financial crash. It has since achieved bestseller status on Amazon.

14. Currently, Mr. Pagliara's Website features information on Mr. Pagliara, his book, and related press coverage. It contains links to purchase *Another Big Lie* via Amazon.com as well as information to contact Mr. Pagliara, engage him to speak at events, reach him for media inquiries, and interact with him on social media.

15. Subsequently, on May 2, 2023,[2] a private registrant, John Doe No. 1, registered the domain name timpagliara.net and created a website that can be accessed using that domain name (the "Squatting Website").

16. The Squatting Website—though it bears his name at the top and bottom of the website in large, capital, stylized letters followed by text describing his position at CapWealth and location in Franklin, Tennessee—has nothing to do with Mr. Pagliara.

17. Upon landing on the page, the following pop-up disclosure appears:

> This website is not affiliated, associated, authorized, endorsed by, or in any way officially connected with Christopher Wimpfheimer, or any of its subsidiaries, employer or its affiliates. The official contact page or profile can be found here. The name(s) Christopher Wimpfheimer as well as related names, marks, emblems and images are registered trademarks of their respective owners, and this website serves merely as a public awareness platform for investment-related grievances.
>
> There are legitimate benefits to publicly analysing [sic] investment brokers and their firms. The public collaboration and discussion of a broker or firm in the Broker Complaints Database is not intended to suggest or imply that they have engaged in illegal or improper conduct.

18. Mr. Wimpfheimer is a wealth management advisor at J.P. Morgan Wealth Management who is based in New York.

19. The word "here" in the second sentence of the above pop-up purporting to provide access to Mr. Wimpfheimer's "official contact page or profile" contains a hyperlink that actually redirects the page to the website of Michael Rosloniec, a wealth management advisor based in Michigan with Graystone Consulting, an

---

[2] This is according to GoDaddy's WHOIS database. A WHOIS database is a database maintained by ICANN-accredited registrars, such as GoDaddy, or ICANN-contracted registries, such as VeriSign, that maintains information regarding who is responsible for a domain name of IP address.

4853-7056-6272.1

affiliate of Morgan Stanley. The URL of the redirect page is https://graystone.morganstanley.com/michael.rosloniec.

20. After dispensing with the pop-up, the Squatting Website's main landing page may be viewed. It prominently features Mr. Wimpfheimer's photograph and position with J.P. Morgan Wealth Management.

21. It also contains a sidebar purporting to list his contact information. However, the phone number, website, and email address provided all relate to an entity called Aaron's, which is a rent-to-own shopping retailer.

22. Scrolling down on the page, the page contains incoherent text that purports to provide resources to report Mr. Wimpfheimer or seek legal action against him as well as information regarding reported disclosures of arbitration decisions involving Mr. Wimpfheimer.

23. The Squatting Website also contains numerous buttons throughout its landing pages and web pages that do not perform any function other than linking back to the current page.

24. The name "BrokerComplaints" is referenced multiple times on the Squatting Website in a fashion suggesting that it is the website's source. Indeed, the credited author of the articles linked on website is "Broker Complaints."

25. However, the domain name "BrokerComplaints.com," which is featured on the Squatting Website, is not even actively used; it is still available for purchase from GoDaddy. Indeed, archives stored on the internet-archive organization Wayback Machine reveal that the domain name remained parked and available for sale for approximately twenty years from when the domain name was created to

approximately late-2022, when it was populated with a sketchy website,[3] before ultimately becoming available for sale again in approximately mid-2023.

26. And near the bottom of the Squatting Website's main landing page, there is textbox titled "Legal and Privacy Policies" that disclaims that "[t]he information contained on the BrokerComplaints Website is general in nature [and] does not address the circumstances of any particular individual," and that the visitor of the site "assume[s] the sole responsibility of evaluating the merits and risks associated with the use of any information on the BrokerComplaints website."

27. That disclaimer is followed by a paragraph purporting to justify that the website is not engaging in cybersquatting under federal law if it is criticizing the trademark owner, citing the summary judgment opinion from ***Career Agents Network Inc. v. careeragentsnetwork.biz***, 2010 WL 743053 (E.D. Mich. Feb. 26, 2010).

---

[3] The website feature articles similar to those on the Squatting Website authored by "Broker Complaints" (or a similar anonym), but these articles used photographs that are blurred out, presumably to avoid copyright liability. The site also stated, "We influence 20 million users and is [sic] the number one business blockchain and crypto news network on the planet." *See*, *e.g.*, https://web.archive.org/web/20230421110707/https://brokercomplaints.com/. In addition to claiming to be a news source, it also claimed to provide services of some type, stating "We're happy to help! BrokerComplaints protects investors from being taken in by scam investments and dishonest sales companies. We can undertake a thorough review before you invest. If you have any questions [sic] please feel free to email us. We will be happy to help." *Id*. Yet, despite claiming to have such a broad audience as a news source and encouraging people to contact it, no contact information was provided: the contact page only contained a statement that contact by phone was faster with no phone number listed, links to social media that either did not work or went to some other account, and an image apparently taken from Google Maps with a pin at some unspecified location near the East River in New York City. *See*, *e.g.*, https://web.archive.org/web/20230121005149/https://www.brokercomplaints.com/contact. Additionally, there is no record of entity by the name of "BrokerComplaints" or "Broker Complaints" registered in New York.

28. Further, on a separate landing page which can be accessed at https://www.timpagliara.net/legal/, the Squatting Website specifically addresses the ACPA and attempts to dissuade people such the Plaintiff from initiating a cybersquatting claim. It states:

> It Is Simply Not Reasonable To Conclude That Someone Viewing This Website Would Be Confused As To The Source, Sponsorship, Affiliation, Or Endorsement Of This Site. ACPA Cannot Simply Be Used As A Weapon To Censor Consumer Discourse Concerning (Dis)Satisfaction With Investment Brokers And Firms. Investors' Feedback On The Internet, Including Griping, Ratings, And Reputations, Has Empowered Other Investors With Information Enabling Them To Make A More Informed Investment. Ref: Cleary Building Corp, V. David A. Dame, Inc., Civil Action No. 09-Cv-01578-CMA-MEH. (DCo Dec. 1, 2009).
>
> The Reason Why We Specifically Select The Domain Name Is To Make This Site More Easily Found By Potential Investors Who Are Interested In The Aforesaid Investor Or His/Her Firm.
>
> In Case You Are Planning To Initiate An ACPA Or A UDRP Proceeding, Here Are Some Facts For Your Consideration –
>
> > we have no intention of selling, renting or profiting from this domain name,
> > there is no scope for any monetization or affiliation on this website,
> > there is no scope for any actual confusion as for the purpose of this website,
> > appropriate disclaimers and alerts make our intentions abundantly clear.
>
> Basically, There Is No Bad Faith Intent Of Profiting From This Domain And Website, And The Sole Purpose Is To Establish A Platform To Enable Investors To Collaborate And Communicate With Each Other And Share Resources And Information.
>
> *Courts Have Said That Using A Company's Trademark To Direct Criticism To That Company Is Not The Same As Using The Trademark With A Bad Faith Intent To Profit Under The Anti-Cyberquatting Protection Act. Offering Criticism And Review Is Actually In Line With The ACPA's Consumer Protection …*

(Sic as to all, emphasis in original.)

29. The Squatting Website is nearly identical to another website that can be accessed under the domain name at christopherwimpfheimer.com, with Mr. Wimpfheimer's name and title substituted for Mr. Pagliara's in the same large, capital, stylized letters at the top and bottom of the page.

30. There is also another highly similar website which can be accessed under the domain name michaelrosloniec.com. While the website contains a different photograph and different contact information, it otherwise features the same website layout, design, and content.

31. Indeed, there are more than at least 110 websites that are either nearly identical or highly similar to the Squatting Website registered at domain names containing the personal names of financial advisors.

32. According to WHOIS database, the domain names used for these other nearly identical or highly similar websites were created either on May 2, 2023—the same day the domain name timpagliara.net was created—or exactly one month later on June 2, 2023.

33. For instance, the domain name jeffreyfratarcangeli.net was created and registered on May 2, 2023. Mr. Jeffrey Fratarcangeli is a financial advisor based in Michigan affiliated with Wells Fargo Advisors Financial Network.

34. And there are two websites using domain names containing the names of Jay and Neil Canell, a pair of brothers affiliated with J.P. Morgan Wealth Management based out of New York, at jaycanell.com and neilcanell.com, respectively. Both domain names were created and registered on June 2, 2023.

35. Additionally, there are two separate domain names that house websites nearly identical or similar to the Squatting Website bearing the name of Russell Rabito, a financial advisor based in New York affiliated with UBS Financial Services. The domain names are russellrabito.com and russrabito.com. Both were created and registered on June 2, 2023.

36. The defendant has created or registered such domain names for financial advisors across the country. For example, Keith Apton is based in Washington DC; Tim Emanuels is based in San Francisco, California; Sharon Oberlander is based in Chicago, Illinois; Peter Princi is based in Boston, Massachusetts; Louis Chiavacci is based in Coral Gables, Florida; Stephanie Cassaday is based in Oklahoma City, Oklahoma; Ira Kravitz is based in Plano, Texas; Curtis Eustis is based in New Orleans, Louisiana; George Papadoyannis is based in San Mateo, California; and Seth Haye is based in Los Angeles, California.

## LEGAL CLAIMS

### COUNT I
**(Cybersquatting — Violation of the ACPA, 15 U.S.C. § 1125(d))**

37. Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 36 of this Complaint as fully as if set out verbatim.

38. The Defendant registered the domain name timpagliara.net or is that registrant's authorized licensee.

39. The Defendant traffics in or uses a domain name containing Mr. Pagliara's personal name which is commonly used to identify him.

40. The Defendant has a bad faith intent to profit from Mr. Pagliara's name.

41. The Squatting Website makes use of Mr. Pagliara's personal name.

42. Mr. Pagliara's name has acquired secondary meaning.

43. Mr. Pagliara's name was distinctive at the time that the domain name timpagliara.net was registered.

44. The domain name timpagliara.net is identical or confusingly similar to Mr. Pagliara's name.

45. The Defendant either did not believe and did not have reasonable grounds to believe that the use of the domain name timpagliara.net was a fair use or was otherwise lawful.

46. The Defendant's registration and use of the domain name containing Plaintiff's personal name is intentional, deliberate, and part of a large-scale pattern of using domain names of individuals with similar positions.

47. Mr. Pagliara has suffered damages as a result of the Defendant's registration and use of the domain name timpagliara.net.

**WHEREFORE**, premises considered, the Plaintiff respectfully prays as follows:

A. That the Court enter a judgment against the Defendant of actual damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1117(a) or, alternatively, a judgment of statutory damages in the amount not less than $1,000 and not more than $100,000 per domain name, in the Court's discretion, pursuant to 15 U.S.C. § 1117(d);

B. That the Court, if actual damages are awarded, treble that amount pursuant to 15 U.S.C. § 1117(a);

C. That the Court order that the domain name timpagliara.net be transferred to the Plaintiff or, alternatively, order the domain name's forfeiture or cancellation;

D. That the Court issue a temporary injunction and a permanent injunction enjoining the Defendant from making further use of or registering any domain name containing the Plaintiff's name, pursuant to 15 U.S.C. § 1116(a);

E. That the Court award the Plaintiff his reasonable attorney's fees;

F. That the Court award Plaintiff prejudgment interest and the costs of this action; and

G. That the Court award Plaintiff all such other relief as may be just, equitable, and proper.

Respectfully submitted,

/s *Eugene N. Bulso, Jr.*
Eugene N. Bulso, Jr. (No. 12005)
Nicholas W. Tsiouvaras (No. 39403)
BULSO PLC
155 Franklin Road, Suite 400
Brentwood, Tennessee 37027
Tel: (615) 913-5200
Fax: (615) 913-5150
gbulso@bulso.com
ntsiouvaras@bulso.com
*Attorneys for Plaintiff*